[No. 53014-9. En Banc. September 24, 1987.]

JOSEPH LOVATO, ET AL, *Respondents,* v. LIBERTY MUTUAL FIRE INSURANCE COMPANY, *Appellant.*

*Reed, McClure, Moceri, Thonn & Moriarty,* by *William R. Hickman, Dennis Smith,* and *Pamela A. Okano,* for appellant.

*Miracle, Pruzan & Morrow,* by *Howard P. Pruzan* and *Charles A. Johnson, Jr.,* for respondents.

ANDERSEN, J.—

## FACTS OF CASE

This case involves the validity of a territorial limitation in an automobile insurance policy.

The insureds are Joseph and Marvene Lovato. They had their 1981 Cadillac insured with Liberty Mutual Fire Insurance Company under an automobile insurance policy on which they were the named insureds. The policy included uninsured/underinsured motorists (UM/UIM) coverage.

By its terms, the policy was limited territorially. It covered only accidents and losses occurring in: "1. The United States of America, its territories or possessions; 2. Puerto Rico; or 3. Canada."

The insureds traveled to Spain where they rented an automobile. When renting it, they declined the option

offered them of taking out personal accident insurance. They drove to Portugal where they sustained injuries in an accident with an underinsured motorist who was at fault. By this declaratory judgment action against their own insurer, they seek a declaration that there is coverage for the Portugal accident under the UM/UIM endorsement of their own policy.

No factual issues are presented. Both parties moved for summary judgment. The trial court held that there was coverage,[1] granted the insureds' motion and denied the insurer's motion. We granted direct review[2] and reverse.

One basic issue is determinative.

## ISSUE

Is the territorial limitation in the insurance policy valid and, if so, does it apply to the UM/UIM endorsement?

## DECISION

CONCLUSION. The policy provision which expressly and clearly limits coverage under the policy to the United States, its territories and possessions, Puerto Rico and Canada is valid. The UM/UIM endorsement is a part of the insurance policy and, as such, is subject to that territorial limitation.

 The territorial limitation does not separately appear in the UM/UIM endorsement. It is, however, contained in the "General Provisions" section of the policy and applies to "this policy". As explained in 2 G. Couch, *Insurance* § 15:30, at 227–29 (2d ed. 1984):

> Indorsements, riders, marginal references, and other writings which constitute a part of the contract of insurance are to be read and construed with the policy proper.[3]

---

[1]The basis for the trial court's decision does not appear in the appellate record.

[2]RAP 4.2.

[3]*Accord*, RCW 48.18.520; *Holthe v. Iskowitz*, 31 Wn.2d 533, 541–42, 197 P.2d 999 (1948); *Nationwide Mut. Ins. Co. v. Akers*, 340 F.2d 150, 154 (4th Cir. 1965);

(Footnotes omitted.) Since nothing in the UM/UIM endorsement evinces a contrary intent, the territorial limitation of the policy applies to the endorsement.[4]

▮▮ Courts in other jurisdictions which have considered the matter seem to have uniformly upheld territorial limitations on UM/UIM coverage of the kind at issue in this case where, as here, those limitations were coextensive with the territorial limitations on general liability coverage.[5] As one legal commentator on the subject observes, "[i]t is not necessary that UM coverages, issued in connection with a liability policy, extend protection throughout the world."[6] The insureds have brought no case to our attention which holds to the contrary.

Although otherwise argued by the insureds, our holding in *Touchette v. Northwestern Mut. Ins. Co.,* 80 Wn.2d 327, 334, 494 P.2d 479 (1972), and the holding in *Mission Ins. Co. v. Brown,* 63 Cal. 2d 508, 511, 407 P.2d 275, 47 Cal. Rptr. 363 (1965) relied on by *Touchette,* are not to the contrary. Both of those cases involved limitations on uninsured motorists coverage that were more restrictive than

---

*Perth Amboy Drydock Co. v. New Jersey Mfrs. Ins. Co.,* 26 A.D.2d 517, 270 N.Y.S.2d 819 (1966); 13A J. Appleman, *Insurance* § 7537, at 140–43 (1976).

[4]*See* RCW 48.18.520; *Holthe,* at 541–42; *Miller v. Penn Mut. Life Ins. Co.,* 189 Wash. 269, 277, 64 P.2d 1050 (1937).

[5]*Curtis v. Allstate Ins. Co.,* 631 F.2d 79, 80–81 (5th Cir. 1980); *Mission Ins. Co. v. Brown,* 63 Cal. 2d 508, 510–11, 407 P.2d 275, 47 Cal. Rptr. 363 (1965); *Robles v. California State Auto. Ass'n,* 79 Cal. App. 3d 602, 610, 145 Cal. Rptr. 115 (1978); *Fischer v. State Farm Mut. Auto. Ins. Co.,* 495 So. 2d 909, 910 (Fla. Dist. Ct. App. 1986); *State Farm Auto Ins. Co. v. Cabuzzi,* 123 N.H. 451, 454, 462 A.2d 129 (1983); *Marchant v. South Carolina Ins. Co.,* 281 S.C. 585, 587, 316 S.E.2d 707 (Ct. App. 1984); *see Cashman v. Economy Fire & Cas. Co.,* 795 F.2d 50, 51 (8th Cir. 1986); *Kvalheim v. Farm Bureau Mut. Ins. Co.,* 195 N.W.2d 726, 729–31 (Iowa 1972); *American Cas. Co. v. Foster,* 31 Misc. 2d 818, 819, 219 N.Y.S.2d 815 (1961); *cf. Transamerica Ins. Co. v. McKee,* 27 Ariz. App. 158, 161, 551 P.2d 1324 (1976).

[6]8C J. Appleman, *Insurance* § 5067.25, at 24 (1981).

that afforded by the policy's general liability ·coverage.[7] That situation is not involved here.

The insureds argue that the limitation in question contravenes public policy. In *Eurick v. Pemco Ins. Co.,* 108 Wn.2d 338, 343, 738 P.2d 251 (1987), we upheld the validity of a motorcycle exclusion to UM/UIM coverage. Apropos of the public policy argument herein, we summarized:

> This court has in the past invalidated exclusions for violating public policy. *See, e.g., Mutual of Enumclaw Ins. Co. v. Wiscomb,* 97 Wn.2d 203, 213, 643 P.2d 441 (1982). However, the place the court initially looks to determine public policy is in statutes. *Britton v. Safeco Ins. Co.,* 104 Wn.2d 518, 528–29, 707 P.2d 125 (1985). . . .
>
> Moreover, exclusions that have been held violative of public policy generally have been those manifesting no relation to any increased risk faced by the insurer, or when innocent victims have been denied coverage for no good reason.

Applying these principles to the case before us, we observe that nothing in the UM/UIM statute, RCW 48.22-.030, indicates a public policy contrary to this territorial limitation. Similarly, increased risks are involved. As one court observed in construing a Louisiana statute similar to our own:

> Insurers providing [uninsured motorists] coverage must base their rates on the risk that the insured will be struck by an uninsured vehicle. It is certainly rational to exclude countries where the number of uninsured motorists is unknown or so high as to make coverage impractical.

*Curtis v. Allstate Ins. Co.,* 473 F. Supp. 315, 317 (E.D. La. 1979), *aff'd,* 631 F.2d 79 (5th Cir. 1980). Furthermore, the insureds in the case before us expressly declined to purchase personal accident coverage that was offered them in connection with their rental of the car they were in at the time of their accident in Portugal.

---

[7]*Cf. Federated Am. Ins. Co. v. Raynes,* 88 Wn.2d 439, 443–44, 563 P.2d 815 (1977); *Rau v. Liberty Mut. Ins. Co.,* 21 Wn. App. 326, 328–29, 585 P.2d 157 (1978).

48

Reversed.

PEARSON, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DORE, CALLOW, GOODLOE, and DURHAM, JJ., concur.