John R. POLLARD

v.

**The HARTFORD INSURANCE COMPANY.**

**No. 89–477 Appeal.**

Supreme Court of Rhode Island.

Dec. 10, 1990.

---

Ronald J. Resmini, Providence, for plaintiff.

C. Russell Bengtson, Providence, for defendant.

## OPINION

KELLEHER, Justice.

This litigation might be considered to have an international flavor.

John R. Pollard, a resident of the city of Cranston, is before us on appeal from the grant by a Superior Court justice of a motion by Pollard's insurer for summary judgment. Hereafter we shall refer to the insured as Pollard and to the insurer as Hartford.

At issue is Pollard's claim that he is entitled to the benefits afforded by the uninsured-motorist portion of an automobile liability policy issued to Pollard and his wife by Hartford. The uninsured vehicle is described in a police report filed by Police Constable Terence Smith as a "white Honda van." Constable Smith was assigned at the time in question to the Kings Cross Police Station in London, England.

The constable's report indicates that on Thursday, June 30, 1988, at 3:37 p.m., a group of pedestrians was crossing "Hay Market from the Bank of Scotland to the Midland Bank." The pedestrians were forced to scatter as the Honda came down the Hay Market. One pedestrian who "did not move in time" was injured. This unfortunate individual was Pollard. According to the report, as "the van caught his foot, he was pulled to the ground." Pollard suffered a fractured foot and minor injuries to his leg.

The issue before us is whether a restriction in Hartford's policy that explicitly limits its uninsured-motorist coverage to accidents and losses occurring within the United States of America, its territories or possessions, Puerto Rico, or Canada is invalid and unenforceable because it is contrary to the language and policy of the statute that requires insurers to provide such coverage.

Pollard argues with vigor that since the uninsured-motorist statute is silent regarding any territorial restrictions, Hartford's restriction must be rejected. On the other hand, Hartford argues that the relevant statutes do not require that uninsured-motorist protection be extended worldwide. In taking this position, counsel points out that this court has, on occasion, upheld policy provisions limiting such coverage.

This court has held on several occasions that the General Assembly enacted G.L. 1956 § 27–7–2.1 for the purpose of providing "[u]ninsured-motorist coverage [to] protect[] the insured against economic loss resulting from injuries caused by a negligent uninsured operator." *DiTata v. Aetna Casualty and Surety Co.*, 542 A.2d 245, 247 (R.I.1988); *Aldcroft v. Fidelity & Casualty Co. of New York*, 106 R.I. 311, 318, 259 A.2d 408, 413 (1969); *Allstate Insurance Co. v. Fusco*, 101 R.I. 350, 356, 223 A.2d 447, 450 (1966).

Pollard's counsel argues that this court has expressly stated in *DiTata*, 542 A.2d at 247, that contracts for uninsured-motorist coverage must be construed in the light of the public policy mandated by the Legislature, which policy was, and remains, indemnification for an insured's loss rather than the defeat of his or her claim. Pollard also relies on other past pronouncements of this court in which we awarded benefits pursuant to the policy's hit-and-run coverage, even though there was no physical contact between the vehicle hit and the vehicle that "ran" away.[1] Pollard also relies on other occasions when this court refused to enforce an "excess escape clause"[2] and we invalidated a policy provision calling for the reduction of any award by whatever workers' compensation benefits may have been received by the litigant.[3]

Pollard also classifies Hartford's geographical limitation as a provision that vio-

---

1. *Su v. Kemper Insurance Companies*, 431 A.2d 416 (R.I.1981).

2. *Pickering v. American Employers Insurance Co.*, 109 R.I. 143, 282 A.2d 584 (1971).

3. *Aldcroft v. Fidelity & Casualty Co. of New York*, 106 R.I. 311, 259 A.2d 408 (1969).

lates public policy. In support of this assertion, he relies on the holding of *Mission Insurance Co. v. Brown*, 63 Cal.2d 508, 407 P.2d 275, 47 Cal.Rptr. 363 (1965).

The court in the *Mission* opinion clearly limited its holding to the particular facts of that case. In *Mission* the court did not explicitly render all geographical limitations of coverage void. In that dispute the liability portion of the policy afforded extended coverage to Mexico. However, an endorsement added to the uninsured-motorist coverage expressly excluded coverage for the vehicle while it was being operated in Mexico. Such an inconsistency in coverage was determined to be a violation of public policy. The rationale of the *Mission* opinion was later adopted by the Supreme Court of Arizona in *Bartning v. State Farm Fire and Casualty Co.*, 162 Ariz. 344, 783 P.2d 790 (1989).

Closer to home, in *Heinrich–Grundy v. Allstate Ins. Co.*, 402 Mass. 810, 811, 525 N.E.2d 651, 652 (1988), Chief Justice Edward F. Hennessey of the Massachusetts Supreme Judicial Court, when considering a geographical limitation in a policy similar to Hartford's, observed that the exclusion under challenge "explicitly and unambiguously excludes coverage for accidents and losses occurring outside the United States and Canada." However, he emphasized that the challenged territorial restriction was a general condition of coverage, applicable to the entire insurance policy.

The Chief Justice also noted that other courts have found critical the distinction between the general conditions of coverage applicable to the entire policy and specific exclusions that are applicable only to the uninsured-motorist coverage. The restrictions on the uninsured portion were upheld when such limitations were no greater than those imposed on the liability coverage.

Here the geographical-limitation clause found in Hartford's policy is a general provision applicable to both the liability portions of the policy and the uninsured-motorist provisions of the policy. This provision is solidly based on public policy. It is our belief that the Legislature did not intend to proscribe territorial restrictions on compulsory uninsured-motorist coverage that are coextensive with valid territorial restrictions on the liability coverage. It is obvious that there are good reasons for insurers to limit liability for losses covered by the uninsured motorists in foreign countries. We would point to the observations made by the court in *Curtis v. Allstate Insurance Co.*, 473 F.Supp. 315, 317 (E.D. La.1979):

> "Insurers providing U.M. [uninsured motorist] coverage must base their rates on the risk that the insured will be struck by an uninsured vehicle. It is certainly rational to exclude countries where the number of uninsured motorists is unknown or so high as to make coverage impractical."

In *Malo v. Aetna Casualty and Surety Co.*, 459 A.2d 954, 956 (R.I.1983), this court noted that "contract terms must then be applied as written and the parties are bound by them." We would also suggest that a reasonable purchaser of an automobile liability policy would not anticipate coverage for losses occurring in noncovered territories.

In this dispute both parties have raised the issue of whether the Honda van was insured. When we review a grant of summary judgment by the Superior Court, we employ the same standards as those of the trial justice. We examine the pleadings and the affidavits in the light most favorable to the nonmoving party, and if no issue of material fact exists, we determine whether the moving party is entitled to judgment as a matter law. *See Nichola v. John Hancock Mut. Life Ins. Co.*, 471 A.2d 945, 947–48 (R.I.1984).

Reviewed by this standard, we believe that the issue before us does not raise a material factual issue. The relevant question is whether the geographical limitation is valid. Since we believe that it is, the issue of whether the motorist was insured, uninsured, or underinsured is immaterial.

Pollard's appeal is denied and dismissed, and the judgment appealed from is affirmed.